## DAVID J. GOULD & NATHAN H. GOULD, Executors & Trustees, v. JOHN WINTHROP and Wife, & others.

The devisee of an estate mortgaged by the testator, whether mortgaged before or after the making of the will, is entitled to have the land devised to him exonerated from the mortgage debt, out of the personal property of the testator not specifically given, as the primary fund for the payment of debts; unless, indeed, there be a clear intention indicated by the will, that the devisee should take *cum onere.*

The same rule applies, although the mortgage upon the devised estate was given by the testatrix in lieu of a former mortgage, subject to which she had acquired the estate; although, if the old mortgage had remained, even if she had engaged, by some collateral agreement, to pay it, the devisee must have taken it, as she held it primarily, liable to the payment of the incumbrance.

A general residuary devise is, as between it and a specific devise, and specific or even pecuniary legacies, the primary fund for the payment of debts; "the rest and residue," meaning, what remains after satisfying all former gifts.

BILL IN EQUITY, filed by the plaintiffs, as executors of, and trustees under, the will of Hannah F. Gale, late of Newport, deceased, for the construction of said will, and for the marshalling of the assets and estate of the said Hannah in the payment of her debts.

The suit, which was an amicable one, was heard in Providence, at the close of the March term, 1858, upon bill and answers ; and from these it appeared, that the testatrix, by her last will and testament, dated the 10th day of April, 1855, devised to the plaintiffs, and to the survivor of them, the Gale Mansion-

house estate, situated at the head of the Park, in Newport, with certain plate, pictures, and furniture therein, together with another lot of land in Newport, called the Brayton lot, in trust, for the use of her son, William B. R. Gale, during his life, and after his death for the use of his three daughters, or such of them as should be living, until the youngest should arrive to the age of twenty-one years, and then, to the survivors or survivor, in fee; and that, by the same will, she devised to her daughter, Sarah C. Winthrop, all the residue and remainder of her estate and property, real, personal, and mixed.

The real estate of the testatrix, not before devised, consisted, at her death, of the Park House estate, so called, adjoining the mansion-house on the east, and the Rousmaniere estate, adjoining the Park House estate on the south; and the only personal property, not specifically bequeathed, was certain furniture in the Rousmaniere house, of the value of some $300 to $400.

In 1835, during the lifetime of Levi H. Gale the husband of the testatrix, the Brayton lot being owned by the testatrix in fee and the other estates devised in her will being owned by her said husband in fee, she joined with her husband in a mortgage on all said estates to the Merchants' Bank in Newport, to secure the sum of $10,000, borrowed by her husband of that bank; and, subsequent to the death of her husband, acquired the equity of redemption in the real estates mortgaged of which the fee was in her husband, subject to the mortgage. At the date of her will there remained due upon this mortgage about the sum of $5,000, subsequently reduced by her to $4,300, which she paid by borrowing the last-named sum of the Savings Bank in Newport; and having thus redeemed the mortgage to the Merchants' Bank, she secured the Savings Bank, in the loan effected with them, by a new mortgage upon the estates formerly owned by her husband, and of which she had purchased in the equity. This last mortgage, covering all the real estates devised, except the Brayton lot, remained unpaid at the death of the testatrix, and, in addition, she was indebted in about the sum of $2,000, to different persons.

The bill was filed against Sarah C. Winthrop, the daughter and residuary devisee and legatee of the testatrix, with whom

was joined her husband, John Winthrop, and William B. R. Gale and his infant daughters, the other devisees under the will.

Winthrop and his wife, by their answer, admitting the facts stated in the bill, claimed, that the mortgage debt should be paid out of the mortgaged estate exclusively; but if not, that it should be paid, ratably, out of all the real estates devised, in proportion to their respective values; and that the personal estate bequeathed to the plaintiffs in trust, and the residuary personal estate, should be applied to the payment of the remaining debts.

William B. R. Gale, by his answer, expressed his willingness that the property devised should be, in that manner, applied to the payment of the debts; and John I. D'Wolf, guardian *ad litem* for the infant daughters of William B. R. Gale, submitted their rights to the decree of the court.

*William H. Potter* appeared, to explain the case, as the representative of all parties to it.

BRAYTON, J. The first question is, whether the mortgage debt is to be paid out of the estate mortgaged, or that estate exonerated out of the other estate of the testatrix.

By the well-settled rule, as between the real and personal representatives, the personal estate is the primary and natural fund for the payment of debts of every description contracted by the testator or intestate. 2 Williams on Executors, 1042. This rule is not changed by the fact that any such debt is secured by mortgage upon the estate devised; and according to Mr. Jarman, in his work on Wills, vol. 2, p. 552, there can at this day be no doubt or controversy, as to the general right of a devisee to be exonerated from an encumbrance to which the testator has subjected the devised estate, whether the encumbrance be created before or after the execution of the will; and the legatee of a specific chattel has the same right. To defeat this right, there must be a clear intention, indicated by the will, that the devisee or legatee shall take *cum onere.*

There is an entire absence of evidence of any such intimation in this will.

This rule, it is true, extends only to encumbrances created by the testator himself; and where he purchases, or otherwise ac-

quires an estate already encumbered, the estate, in his hands, is the primary fund for the payment of the debt charged thereon; and if he then devise the estate, so charged by another, his devisee must take it *cum onere.*

It is suggested, that inasmuch as the testatrix, in this case, purchased the estates comprehended in this mortgage already encumbered with the mortgage debt of her husband, and not her own, this case should fall within the latter rule, rather than the first; and that the devisees of this real estate should take it *cum onere*, as charged with the debt of Levi H. Gale, her husband.

There are cases which hold, that until the testator who acquires an estate thus encumbered, has done some act to assume the mortgage debt and make it his own, his personal representatives cannot be charged, and the land remains the only fund for payment; and so is the law; and that no mere collateral undertaking of the testator will make the debt his, within the meaning of the rule; such as, a covenant with the mortgagor to save him harmless, or one with the mortgagee, that he will pay him the debt, on the giving of a promissory note for the amount of the debt. *Evelyn* v. *Evelyn*, 2 P. Wms. 664, n. If, however, it be assumed as the personal debt of the testator, the real estate mortgaged ceases to be the primary fund for payment; and the case falls within the general rule first stated, which makes the personalty first liable for the debts.

The question in all these cases has been, whether the purchaser has, by his conduct in relation to the debt, made it his own personal debt, and not whether having made it his own, it was still to be paid out of the estate mortgaged. In the case before us the original debt has ceased to exist. Both the debt and the mortgage have been satisfied and discharged. No debt now exists, except the debt contracted by the testatrix herself; and there is no ground for treating her obligation here as collateral to the contract of any other person. In all the cases where it has been held that the purchaser had not made the original debt his own, that debt was still subsisting in favor of the person with whom it was originally contracted; and no case is found, where the original debt has been extinguished, in which the right of exoneration has been denied.

In the case of *Barham* v. *The Earl of Thanet*, 3 M. & K. 607, the estate descended to the heir charged by mortgage with the sum of £80,000. The heir was called upon to pay; and thereupon, he raised the sum of £30,000 by a mortgage upon the same estate, executed by himself; and this sum was applied by him to the payment of the first mortgage. It was held, that to the extent of this sum of £30,000, it was the personal debt of the heir, and was properly chargeable upon his personal estate; and that the devisee of the real estate was entitled to have it exonerated for so much; but that thereby he had not assumed the residue of the £80,000, which still remained charged, as to his representatives, upon the land only. This decision is in conformity with all the decided cases upon this subject; and follows out the principle which governed them. Applying the principle of this case to the one before us, we must come to the conclusion, that the testatrix, by payment of the prior mortgage, and by contracting a new debt in her own name for the payment of which she alone was personally bound, has charged her personalty with its payment; and that the real estate charged by her mortgage is not the primary fund for its payment.

It is suggested and claimed, by the answer of Mr. and Mrs. Winthrop, that if the devisees of the estate mortgaged are entitled to exoneration, that the Brayton lot, so called, which is not included in the mortgage, and is specifically devised, should contribute in proportion to its value. By the rule applicable to the subject, though the devisee is entitled to have the estate exonerated out of the personalty, he cannot claim it, for want of such personalty, out of any specific gift, either personal or real, or even against a pecuniary legatee. That he cannot claim it against a specific legatee, was decided in the case of *Johnson* v. *Child*, 4 Hare, 87; and in *O'Neal* v. *Mead*, 1 P. Wms. 693, where a testator devised freehold, subject to a mortgage, and also leasehold estate to B., specifically, it was held, that the leasehold was not to contribute to the payment of the mortgage. See also *Halliwell* v. *Tanner*, 1 R. & Myl. 633.

The Brayton lot, then, being specifically devised, cannot be held to contribute to the payment of this mortgage; it being neither charged by the will, nor included in the mortgage.

It is claimed that the real estate devised to Mrs. Winthrop is not chargeable with the debt, and is to be treated as a specific devise to her of those estates, exempted from contribution.

In *Bench & others* v. *Biles*, 4 Madd. 102, Sir John Leach held, that where a mixed fund is given, of real and personal estate, the real estate is equally charged with the personal; giving as a reason, that the testator treats all as one fund, the rest, residue, and remainder, whatever it may be. In *Hanby* v. *Roberts*, Amb. 127, Lord Hardwicke says, that if one having land and personal estate, and being indebted by specialty, give specific legacies, and then the rest and residue of his estate, real and personal, the legatee shall stand in the place of the creditor, and come against the residuary devisee, because he has only the rest and residue. This is affirmed in *Bonner* v. *Bonner*, 13 Ves. 379. In *Lewis* v. *Darling*, 16 How. 1, in a like case, it is said, the residue can only mean what remains after satisfying the previous gifts. To the same point is *Francis* v. *Clemow*, 23 Eng. L. & Eq. 125, as is the case of *Cole* v. *Turner*, 4 Russ. 376. In *Mirehouse* v. *Scaife*, 2 M. & Cr. 695, the chancellor says, the rule that pecuniary legacies are not entitled to have the assets marshalled against a devisee, is confined to specific devises; and that they are entitled, as against land passing under a residuary devise. The case of *Spong* v. *Spong*, 3 Bligh. (N. S.) 84, was determined in the House of Lords upon this distinction between a specific devise and a general residuary one. The testator, in that case, made a specific devise of certain real estate; he then gave certain legacies, and charged all his real estate with their payment; and finally devised all the rest and residue, real and personal, to his son. The court of exchequer held all the real estate equally chargeable; but this decision was overruled in the House of Lords, where it was held, that the residuary realty was chargeable; because it was only the rest and residue, after the other gifts were deducted; and that the specific devise was only to come in aid of the residue, if exhausted. Ib.; and S. C. 1 Young. & Jerv. 300.

The general residuary estates which passed by the will to Mrs. Winthrop, are chargeable with all the debts of the testatrix; the mortgage debt with the others; and if these are insuf-

ficient for their payment, the balance of the mortgage debt must remain a charge upon the estate mortgaged and specifically devised to the trustees ; since, the devisees of this estate cannot claim exoneration out of any specific gift, and all other the estate of the testatrix will be exhausted. Let the decree be accordingly.